HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In the Matter of the Complaint of Northwest Rock Products, Inc., as owner, and Sealevel Bulkhead Builders, Inc., as charterer of the barge COMPLIANT, Official No. 505016, for Exoneration from or Limitation of Liability, | CASE NO. C16-5340RBL<br><br>ORDER GRANTING SUMMARY JUDGMENT |

THIS MATTER is before the Court on Petitioners' (Northwest Rock and Sealevel) Motion for Summary Judgment [Dkt. #63]. The Court has reviewed the materials filed in support of and in opposition to the motion as well as the following cases: *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), *University of Texas Medical Branch at Galveston v. U.S.*, 557 F.2d 438 (1977), and *Nautilus Marine, Inc. v. Niemela, et al*, 170 F.3d 1195 (1999). For the reasons stated below, the Motion is **GRANTED** and Claimant Schnitzer Steel's claims are **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

The rock barge COMPLIANT sank in the Hylebos Waterway on November 6, 2015. The day before, the barge was moored at the Walrath Marine Facility where it was loaded with 285

ORDER GRANTING SUMMARY JUDGMENT - 1

tons of large bulkhead rocks and an excavator, which were to be transported to a job site. Petitioner Sealevel was in charge of the barge and was responsible for its maintenance. The night of November 6, 2015, the barge sank to the bottom of the waterway. The condition of the barge in the months before the sinking was such that a reasonable inference of unseaworthy condition can be drawn.

From November 11, 2015 to December 6, 2015, the recovery and salvage of the barge and the excavator was accomplished. From February to June 2016, extensive talks were held between representatives of concerned businesses, including Schnitzer, Walrath Marine, TPT U.S. Limited, the Port of Tacoma, state and federal environmental agencies, as well as the Army Corps of Engineers and Coast Guard, about the removal of the boulders from the shipping channel. The actual removal of the rock was accomplished by the end of June 2016. Much of the discussion during the interim was whether and how to remove the rocks without disturbing the contaminated soil at the bottom of the Hylebos.

Petitioners filed this action seeking exoneration from or limitation of liability pursuant to the Limitation of Vessel Owner's Liability Act, 46 U.S.C. § 30505. Five entities initially filed claims against Petitioners, including the United States government, the Port of Tacoma, Walrath Marine, TPT U.S. Limited, and Schnitzer. The only entity which actually sustained any physical damage to property was Walrath Marine. Walrath voluntarily withdrew its claim in October 2016. The other entities primarily allege that the sinking disrupted their various uses of the waterway, causing economic losses. All but Schnitzer voluntarily withdrew their claims in October 2016. Schnitzer seeks recovery of economic losses occasioned by the sinking of the rocks and for intentional interference with business expectancies caused by the draft restrictions imposed by the presence of the large boulders present in the waterway.

## II. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B. Schnitzer is BARRED from Recovering Economic Loss Damages.**

In 1927 Justice Holmes of the United States Supreme Court established a principle of Admiralty Law that has stood the test of time: "a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far." *Robins Dry Dock & Repair Co. v. Flint, et al*, 275 U.S. 303, 309 (1927). The reasoning for the Court's decision is based on the special need for limitations to recoverable damages in marine casualty cases, which inherently involve nearly limitless potential damages. *See*, *2 Admiralty & Maritime Law*, § 14-7 (5th ed.), where it states, "A disaster such as oil spill, the ramming of a

bridge, or a collision blocking a channel, may have extremely broad economic repercussions, causing delays, inconvenience, and other harm to a wide variety of interests and persons. Reasonable limits on a tortfeasor's responsibility are necessary both to facilitate the judicial administration of compensation for claims and to avoid stretching the third party system of liability insurance to the breaking point." *Id*.

The *Robins Dry Dock* rule has been upheld time and time again. *See, e.g., Nautilus Marine, Inc. v. Niemela*, 170 F.3d 1195 (9th Cir. 1999) ("Thus, *Robins Dry Dock* established a general rule, which retains its vitality, against recovery of economic loss caused by a maritime tort to the person or property of another"); and *American Petroleum and Transport, Inc. v. City of New York*, 737 F.3d 185 (2nd Cir. 2013) (noting that the *Robins Dry Dock* rule "has been so consistently applied in admiralty that it should continue to be applied unless and until altered by Congress or the Supreme Court").

The rule has been applied in situations involving a maritime casualty which obstructs a third party's transportation capabilities. *See, e.g., In re Bertucci Contracting Co., LLC*, 712 F.3d 245 (5th Cir. 2013) (barring residents of community from recovering economic damages from vessel owner, where vessel collided with a bridge and caused it to close for a period of time); *Louisville & N. R. Co. v. Arrow Transp. Co.*, 170 F.Supp. 597 (N.D. Ala. 1959) (dismissing plaintiff railroad's claims against defendant whose vessel struck and damaged a drawbridge, allegedly resulting in economic losses during the period of time the railroad was forced to reroute its trains while the bridge was being repaired).

In *General Foods Corp. v. U.S.*, 448 F.Supp. 111 (D. Md. 1978), a vessel collided with a bridge, causing significant damage which rendered the bridge unusable for a period of time. The plaintiff owned and operated a manufacturing plant which required use of the bridge as its sole means of railroad transportation of goods to and from the plant. *Id.* With the bridge out of

commission while it was being repaired, the plaintiff allegedly incurred economic losses due to its having to ship goods via trucks rather than trains. *Id.* The court dismissed the plaintiff's claims, noting that "[b]y the well-established general rule, a plaintiff who has suffered only the loss of an economic advantage due to negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* The plaintiff argued that *Robins Dry Dock* did not apply because the defendant vessel owner "knew that plaintiff and other businesses . . . could only ship by rail by using [the bridge]." *Id.*, at 114. The court found this alleged knowledge to be irrelevant, finding that the plaintiff's position was "more remote than the plaintiff in *Robins*" and that allowing recovery would wrongly invoke a "wide and open-ended liability." *Id.*

Here, Schnitzer similarly alleges that it sustained transportation-related economic losses as a result of the sinking. These alleged economic losses must be rejected pursuant to *Robins Dry Dock*.

Schnitzer alleges that it had a proprietary interest in the Hylebos Waterway by virtue of a National Pollutant Discharge Elimination System (NPDES) permit, and that the barge sinking damaged that interest. The NPDES permit in no way conveys a proprietary interest in the waterway. The permit imposes responsibilities to limit effluents from their property and to retrieve/recover large scraps of metal falling into the waterway as a normal occurrence of their scrap business. The sinking of the barge and the time elapsed before the complete recovery of the barge and its cargo have no impact on Schnitzer's obligations imposed by the permit. The *Robins Day Dock* rule stands.

There is no evidence to support Schnitzer's theory that Petitioners intended to harm Schnitzer's business interests. The sinking of the COMPLIANT was, at best, caused by negligent maintenance. The process and passing of time to accomplish the removal of the barge and its cargo was arguably reasonable. In no case can it be argued with a straight face that

petitioners delay in recovery was motivated by an intention to prolong damage to Schnitzer's economic interest.

In *Nautilus Marine, Inc. v. Niemela, et al*, 170 F.3d 1195 (1999), the 9th Circuit affirmed dismissal of the plaintiff's claims due to its failure to show intentional interference, noting that the key to intentional interference "is not merely that the tort is intentional, but that the tortfeasor knew of the plaintiff's contractual relation and intended to interfere with it." *Id*. Here, Schnitzer provides no legitimate response to *Nautilus*.

In addition, Schnitzer's argument that Petitioners had a "statutory duty to remove a wreck" and elected to "abdicate this duty" is entirely unfounded. The only legal authority cited for this argument is a case involving a claim by the federal government to recover costs in removing a sunken vessel. *See University of Texas Med. Branch v. United States*, 557 F2d 438 (5th Cir. 1977). Here, there is no claim by the federal government to recover wreck removal costs. Moreover, Schnitzer has not provided evidence that Petitioners had any statutory duty, let alone that they abdicated such a duty.

In sum, Schnitzer has cited no legal authority supporting the argument that an exception to *Robins Dry Dock* for intentional torts should apply here.

//

//

//

//

//

//

### III. CONCLUSION

Petitioners' Motion for Summary Judgment [Dkt. #63] is **GRANTED**. Schnitzer's claims are **DISMISSED WITH PREJUDICE.**

**This matter is closed.**

**IT IS SO ORDERED.**

Dated this 4th day of January, 2018.

*Ronald B. Leighton*
Ronald B. Leighton
United States District Judge